UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10CR120 CDP |
| | ) | (FRB) |
| MANU BEVLY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM, REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The defendant filed pretrial motions, and testimony and evidence was adduced on the motions.

Defendant's Motions

1. Motion to Suppress Statements (Docket No. 20); and

2. Motion to Suppress Evidence (Docket No. 21).

From the testimony and evidence adduced at the hearing on the defendant's motions, the undersigned makes the following findings of fact and conclusions of law:

Findings of Fact

On February 3, 2010, Detective Robert Singh of the St. Louis Metropolitan Police Department, and at the time a deputized Special Federal Officer, applied for a warrant to search a premises described in the search warrant application as

> the residence at 3915 Miami Street, St. Louis, Missouri, located within the Eastern District of Missouri, . . . more fully described as a multiple family residence having the numbers 3915 affixed to the left above the right white front door and white screen door, with the front having a reddish brown brick exterior.

The application was accompanied by the affidavit of Detective Singh which set out his training and experience, particularly in the area of narcotics investigations. The affidavit further set out that a confidential informant told Detective Singh that Manu Bevly was selling heroin from his residence at 3915 Miami Street and also that Bevly was in possession of a firearm. The informant reported that he/she had seen Bevly in possession of heroin and a firearm within the previous week. The informant gave a physical description of Bevly and described his method of operation of his drug dealings. The informant also described the vehicle used and driven by Bevly. The affidavit stated that the confidential informant had provided information in the past on several occasions which had proven to be reliable. The affidavit also set out that Detective Singh, on two occasions during the weeks of January 24 and January 31, 2010, had conducted surveillance of 3915 Miami, and had seen Bevly leave the Miami residence, enter a vehicle fitting the description of the vehicle described by the informant, and engage in activity consistent with the informant's description of Bevly's modus operandi for drug dealing. The affidavit also stated that Detective Singh had obtained known photographs of Bevly, who

had numerous prior arrests as set out in the affidavit, and that the person he had seen coming out of the Miami residence appeared to be the same person depicted in the photographs. (See Government's Exh. A — Appl. & Affid. for Search Warrant.)

Based on the information set out in the application and affidavit, United States Magistrate Judge Terry I. Adelman found probable cause to believe that illegal controlled substances, firearms, currency, related items, and paraphernalia could be found on the premises described and issued a warrant to search the residence. (See Government's Exh. A — Search Warrant, 4:10MJ1002 TIA.)

On February 4, 2010, Detective Singh and other officers went to 3915 Miami. They saw Bevly leave the residence, get into an automobile and drive away from the area. The officers followed Bevly to the 3900 block of Natural Bridge Avenue where Bevly stopped and got out of his car. He then went into a residence. When Bevly came out of the residence, and as he walked toward his car, Detective Singh approached Bevly. Detective Singh told Bevly that he had a warrant to search his residence. Detective Singh then advised Bevly of his constitutional rights, and specifically that he had the right to remain silent; that anything he said could be used against him; that he had the right to speak to a lawyer before answering questions and to have the lawyer present during questioning if he wished; and that if he could not afford a lawyer, one would be appointed for him before questioning if he wished.

Detective Singh read these rights to Bevly from a card. Bevly then told Detective Singh that there was a handgun in the residence. He described the gun and where it could be found in the residence. Bevly also said there was a quantity of heroin in the residence. Detective Singh then handcuffed Bevly, placed him into a police vehicle and drove back to the Miami residence.

Upon arriving at the residence, the officers entered the residence and executed the search warrant. Once inside the residence, Detective Singh asked Bevly if any large amount of currency was in the residence and Bevly replied that there was about $18,000.00 in the residence.

Detective Singh testified that as one faces the front of the residence, the number 3915 is visible above the door. There is one door to the right and one door to the left. Neither door is further marked and identified in any way. Detective Singh testified that during his January surveillances of the residence, and again on February 4 when he saw Bevly leave the residence, it was always from the door on the right, which was the door described in the warrant. (See Government's Exhs. C & D — Photos of Residence.)

Inside the residence, the officers found and seized a 9-millimeter handgun, ammunition, bags containing a brown substance and a large amount of United States currency, and related paraphernalia. (See Government's Exh. A — Search Warrant Return.)

Bevly was then placed under arrest for possession of the items found in the residence. He was again advised of the same rights of which he was previously advised, the rights again being read to him from a card by Detective Singh.

Bevly was transported to offices of the Federal Bureau of Investigation (F.B.I.). There he was again advised of the same rights of which he had previously been advised. On this occasion, the rights were read to him from a printed form. Bevly signed the form acknowledging that he had been advised of and understood his rights and that he was willing to answer questions without a lawyer present. (See Government's Exh. B.)

Bevly then spoke with the officers and indicated that he wished to cooperate with them in a further investigation. It was determined not to proceed with a prosecution at that time and, after an appearance before a United States Magistrate Judge, Bevly was released from custody. Thereafter, he spoke on several occasions with Detective Singh.

At the hearing on defendant's motions, Detective Singh testified, as did defendant Bevly. At the hearing, Bevly testified that the first and only time he was advised of his rights by Detective Singh on February 4, 2010, was at the F.B.I. office and never before. To the extent that it is necessary to resolve the conflict in this testimony in order to address the issues raised in defendant's motions, having seen and heard the witnesses'

testimony, to observe their demeanor and manner while testifying, and considering all matters reflecting on their credibility, the undersigned does choose to credit the testimony of Detective Singh on these matters.

At the hearing, Bevly produced a billing statement addressed to him from Laclede Gas Company showing his address as 3915 Miami, Apartment 2, St. Louis, Mo. 63116; and a card from the U.S. Census Bureau addressed "To Resident at 3915A Miami, St. Louis, Mo. 63136-3624."

## Discussion

The sole claim asserted by the defendant as grounds to suppress the statements made by him to the officers on February 4, 2010, is that the defendant "was not issued his Miranda rights until he was conveyed to the FBI St. Louis Office." This claim is not supported by credible evidence adduced at the hearing on defendant's motions.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that before questioning a person in custody, law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used against him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney, one will be appointed for him. Id. at 478-79. The officials may question the person after so advising him if the person

voluntarily, knowingly and intelligently waives these rights and agrees to answer questions put to him by the officials. Absent such advice and waiver, statements obtained through interrogation of a person in custody are not admissible against the person at trial. Id. at 479.

Detective Singh testified that he advised the defendant of his rights prior to putting any questions to the defendant on February 4, 2010. The rights of which the defendant was advised, as testified to by Detective Singh, complied with the dictates of Miranda. Further, after being so advised, the defendant answered questions put to him by Detective Singh. The record here demonstrates that the defendant knowingly, intelligently and voluntarily waived his right to remain silent. "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." Berghuis v. Thompkins, ___ U.S. ___, 130 S. Ct. 2250, 2262 (2010). "[A] suspect who has received and understood the Miranda warnings, and has not invoked his Miranda rights, waives the right to remain silent by making an uncoerced statement to the police." Id. at 2264.

As grounds to suppress the evidence seized from the residence at 3915 Miami Street on February 4, 2010, the defendant

claims that the search warrant "did not accurately and precisely describe the place to be searched." He claims that the proper address of the property searched was 3915A Miami, the second floor residence, and not 3915 Miami, the first floor residence.

The Fourth Amendment of the United States Constitution states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.

> The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.

United States v. Gitcho, 601 F.2d 369, 371 (8th Cir.), cert. denied, 444 U.S. 871 (1979); see also United States v. Palega, 556 F.3d 709, 713 (8th Cir. 2009).

The description of the premises set out in the warrant at issue here met this standard. The warrant noted that the residence at 3915 Miami was a "multiple family residence" and that the number "3915" was affixed above and to the left of the right white front door. Reference to a "right" door carries with it the implication that there is a "left" door, and that the warrant authorized a search of the residence entered through the right side door. Furthermore, Detective Singh, the affiant and applicant for the

warrant, had personally conducted surveillance in which he saw the defendant exit the right front door, and Detective Singh was present when the warrant was executed, thus assuring that the warrant was executed at the proper residence. In these circumstances, there was no chance that the wrong premises would be searched. See United States v. Gamboa, 439 F.3d 796, 806-07 (8th Cir. 2006); United States v. Clement, 747 F.2d 460, 461 (8th Cir. 1984); Gitcho, 601 F.2d at 372.

The defendant's claim that the description of the premises to be searched did not meet the particularity requirement of the Fourth Amendment is without merit.

## Conclusion

For all of the foregoing reasons, the defendant's Motion to Suppress Statements and Motion to Suppress Evidence should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Statements (Docket No. 20) be denied.

**IT IS FURTHER RECOMMENDED** that defendant's Motion to Suppress Evidence (Docket No. 21) be denied.

The parties are advised that any written objections to this Memorandum, Report and Recommendation shall be filed not later than **July 30, 2010**. Failure to timely file objections may result

in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

                                        /s/ Frederick R. Buckles
                                       UNITED STATES MAGISTRATE JUDGE

Dated this <u> 20th </u> day of July, 2010.